UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ALLAN BECK, et al.,                   ) | |
|                                            ) | |
|     Plaintiffs                          ) | |
|                                            ) | |
| v.                                              ) 2:13-cv-00090-JAW | |
|                                              ) | |
| FEDERAL NATIONAL MORTGAGE    ) | |
| ASSOCIATION, et al.,               ) | |
|                                              ) | |
|     Defendants                    ) | |

## RECOMMENDED DECISION

Allan and Sheri Beck, self-described as "lawful owners of a parcel of Real Property" located in Nobleboro, Maine, have brought suit against the Federal National Mortgage Association ("Fannie Mae"), CitiMortgage, Inc. ("CMI"), and Mortgage Electronic Registration Systems, Inc. ("MERS"). (Complaint ¶¶ 1-4.) Fannie Mae and MERS have not yet responded to the lawsuit, but CMI has filed a motion to dismiss count one, breach of contract; count three, action to quiet title; and count four, an action for declaratory relief regarding the enforceability of the mortgage. If CMI's motion were granted, the only count remaining against it would be count two, which alleges a violation of 12 U.S.C. § 2601, et. seq., the Real Estate Settlement Procedures Act. I now recommend that the court grant the motion.

### COMPLAINT ALLEGATIONS[1]

On May 20, 2009, the plaintiffs executed a note and mortgage to Provident Funding Associates, L.P. (Complaint ¶¶ 9-11.) Soon after the loan's origination it was sold, bundled into a group of notes, and resold to investors as a mortgage-backed security by a Fannie Mae

---

[1] I have omitted the allegations pertaining to the RESPA count (Count II, Complaint ¶¶ 75-93) because the defendant does not seek dismissal of that count.

securitized trust.  Fannie Mae is the current trustee for the trust, CMI is the servicer of the loan, and MERS is the nominee mortgagee of the mortgage.  (Id. ¶¶ 12-15.)

According to the plaintiffs, Fannie Mae alleges it is the holder and owner of the note and the beneficiary of the mortgage, but there is "no perfected chain of title" between Provident and Fannie Mae and therefore no legal assignment from the originator to the other defendants.  (Id. ¶¶ 16-17.)  The plaintiffs believe that Provident sold its interest in the loan and was paid in full, but that Provident did not properly transfer or endorse the note to "Defendants."  (Id. ¶¶ 18-19.)  They allege unspecified legal violations during the processing of their loan.  (Id. ¶ 21.)

The plaintiffs allege that "slanders of title" have arisen regarding unrecorded claims due to MERS being involved in the process.  They claim they are unable to obtain "full title insurance" rendering the sale of their home difficult, and that their action "is to determine the validity of the MORTGAGE as to any unrecorded assignees over a period of years."  (Id. ¶ 22.)  There is no assignment of the loan or mortgage in the official records of Lincoln County.[2]  (Id. ¶ 25.)  The plaintiffs "believe" that the use of MERS as a nominee mortgagee to avoid recording every transfer of beneficial interest in the note and mortgage means that "the party with the interest in the loan has either abandoned the MORTGAGE" or that "the MORTGAGE was never assigned to the new lender, making the MORTGAGE a nullity."  (Id. ¶ 26.)  The plaintiffs acknowledge that paragraph 20 of the mortgage provides that the note and mortgage may be sold, but they maintain the two documents were to be transferred together and that the failure to record assignment of the mortgage in the Lincoln County Registry of Deeds to reflect the transfer amounts to a breach of the terms of the mortgage that voids both the mortgage and the

---

[2]   As explained in the discussion on standing, CMI has introduced contrary evidence indicating that it has filed an assignment of the mortgage in the Lincoln County Registry.

note. (Id. ¶ 27.) The mortgage is governed by Maine law. (Id. ¶ 28.) The plaintiffs allege that unrecorded assignments are fraudulent and void. (Id. ¶¶ 29-34.)

The plaintiffs allege that their note and their mortgage were separated since the closing date because MERS was nominated as mortgagee but did not hold the note and that the separation of "ownership" of the note and the mortgage, including by means of sale and securitization or pooling of their note, precludes any holder of the resulting investment security from claiming status as "a real party in interest" and prevents the note and mortgage from ever being "reattached" through "adhesion." (Id. ¶¶ 38-39.) Separation of the note and the mortgage, they say, makes the mortgage unenforceable. (Id. ¶ 40.)

The plaintiffs state that MERS cannot assign an enforceable mortgage when neither the original note holder nor MERS possesses the note any longer. They also maintain that MERS does not qualify as a mortgagee. (Id. ¶¶ 41-42.) They say, among other things, that there is no statutory definition of a nominee mortgagee, that such status is not disclosed or defined in the mortgage, that there can be no assignment of a mortgage without an accompanying assignment of the note, and that any attempt to make such an assignment is a fraud. (Id. ¶¶ 49-54.) They maintain that their note has now been paid in full by the holders of whatever mortgage-back security their mortgage loan was bundled into. Because it has been paid in full, they say the mortgage is no longer necessary and that neither the defendants nor the holders of the mortgage-backed securities have suffered any loss related to the plaintiffs' loan. (Id. ¶¶ 55-58.)

The plaintiffs further allege that none of the defendants has standing to enforce the mortgage and thus a "null" mortgage clouds their title. (Id. ¶¶ 59-61.) They offer an assessment of the "significance of MERS," alleging that its mere existence is unfair and deceptive, that it

was designed to mislead borrowers, and that MERS can neither enforce the mortgage nor convey an enforceable right to any of its successors. (Id. ¶¶ 62-64.)

The plaintiffs' substantive claims are for breach of contract, violation of the Real Estate Settlement Procedures Act (RESPA), quiet title, and declaratory judgment. (Id. ¶¶ 65-74, 94-111.) The plaintiffs' prayer for relief is targeted entirely toward nullification of the mortgage. The prayer does not request an order declaring the promissory note satisfied, though the Becks appear to believe that their note has been paid in full by third parties.

## MOTION TO DISMISS LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face." Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). A plaintiff's complaint need not provide an exhaustive factual account, only "a short and plain statement." However, the allegations must be sufficient to identify the manner

by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 129 S. Ct. at 1949.

When the plaintiff is a pro se litigant, the Court will review his or her complaint subject to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Additionally, the pleadings of pro se plaintiffs are generally interpreted in light of supplemental submissions, such as any response to a motion to dismiss. Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003). In some circumstances, if it appears that a pro se litigant might be able to plead adequate facts if he or she better understood the applicable law, the Court may provide some opportunity to understand what the law requires, along with an opportunity to supplement the pleadings. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004); Cote v. Maloney, 152 Fed. App'x 6, 8 (1st Cir. 2005) (unpublished).

A motion to dismiss for failure to state a claim is ordinarily evaluated in light of the allegations contained within the four corners of the plaintiff's complaint. Young v. Lepone, 305 F.3d 1, 10-11 (1st Cir. 2012). An exception to the four-corner rule exists when the complaint's allegations "revolve around a document whose authenticity is unchallenged," in which case the document in question "effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Id. at 11 (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)). In this case CMI has filed four documents in support of its motion, including an affidavit as to authenticity and three documents referenced in the complaint. (ECF Nos. 16-1, "Mortgage"; 16-2, "Note"; and 16-3, "Assignment of Mortgage by MERS.") In their reply the plaintiffs do not dispute the authenticity of these three documents, only their legal significance. Of these three documents, the Assignment is the only one not identified in the complaint.

A complaint is also subject to summary dismissal based on a plaintiff's failure to demonstrate that the Court has jurisdiction over the subject matter of the case. Fed. R. Civ. P. 12(b)(1). A plaintiff's lack of standing to sue will support dismissal based on lack of subject matter jurisdiction. United Seniors Ass'n v. Philip Morris USA, 500 F.3d 19, 23 (1st Cir. 2003). If the plaintiff's pleading is challenged on this ground, the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists and the court may consider evidence outside of the pleadings to determine the jurisdictional question. Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). The Court should endeavor to resolve challenges to its exercise of jurisdiction before addressing the merits of a case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002).

## DISCUSSION

CMI's motion to dismiss is premised first on the notion that the Becks do not have standing to quiet title or obtain a declaratory judgment that the assignment of their mortgage was invalid, absent a pending foreclosure action by CMI that would serve to create a justiciable case or controversy. CMI also posits that the breach of contract count, the quiet title count, the declaratory judgment count, and the fraud count fail to state claims against CMI under Maine law. (Mot. to Dismiss, ECF No. 14; Mem. in Support of Mot. to Dismiss, ECF No. 15.) CMI is correct that the Becks have failed to state a claim for which relief can be granted. The difficult question is whether the court should dismiss the case on the basis of lack of standing or on the merits.

**A.     Standing**

The question is whether the Becks have standing to sue for breach of contract, to quiet title, or to obtain a declaratory judgment on the basis of the facts they have alleged in their

6

complaint and the facts proven by CMI in relation to its status and the filing it made in the registry. To begin, there is no suggestion that the Becks have failed to satisfy the requirements of federal court jurisdiction (either diversity jurisdiction or supplemental jurisdiction based on the existence of the RESPA count). The four claims[3] challenged in CMI's motion are all state law claims. Consequently, Maine law governs the issue of standing. See Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 290 (1st Cir. 2013) (assessing Massachusetts law to evaluate a motion to dismiss for lack of standing); see also City of Yorkville v. Am. S. Ins. Co., 654 F.3d 713, 716 (7th Cir. 2011); Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 173 (2d Cir. 2005). The Becks allege, and CMI does not contest, that the mortgage is governed by Maine law.

As for the concept of standing, both federal law and Maine law draw on the same principle "that a plaintiff must have a personal stake in the outcome of the litigation." Culhane, 708 F.3d at 289; see Mortg. Elec. Registration Sys. v. Saunders, 2010 ME 79, ¶ 7, 2 A.3d 289, 293-94. But more than just being interested in the resolution of a legal question, the plaintiff's action must concern a particularized injury caused by the defendant that is amenable to judicial action. Culhane, 708 F.3d at 289; Saunders, 2010 ME 79, ¶ 7. A particularized injury entails an invasion of a legal interest that is concrete and particularized and actual or imminent rather than conjectural or hypothetical. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "A party must assert a personal stake in the outcome of the litigation and present a real and substantial controversy touching on the legal relations of parties with adverse legal interests." Franklin Prop. Trust v. Foresite, Inc., 438 A.2d 218, 220 (1981) (recognizing standing where the

---

[3] CMI briefs an additional claim of fraud because the Becks have included fraud allegations in the complaint, albeit without asserting a fraud count.

7

plaintiff's claim would nullify the defendant's claimed title). As with federal law, state law treats lack of standing as a jurisdictional flaw. Saunders, 2010 ME 79, ¶ 15.

In Culhane, the First Circuit considered "whether a mortgagor has standing to challenge the assignment of her mortgage." 708 F.3d at 289. Although the mortgagor is not a party to the assignment, the Court held that a mortgagor had standing to challenge the assignment in the specific context of challenging the assignee mortgagee's right to foreclose because such a scenario presents a concrete and particularized injury, allegedly caused by the challenged assignment, that could be redressed through judicial action. Id. at 289-90. The Court observed that mortgagors have a direct interest in the legitimacy of rights asserted by assignee mortgagees seeking to foreclose on their homes, id. at 290, and have "standing to challenge the assignment of a mortgage . . . to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee," id. at 291 (interpreting rights bestowed by Massachusetts law).

Ultimately, Culhane does not resolve the issue presented in this case because Culhane applied Massachusetts law[4] and because Culhane involved a challenge to a pending foreclosure proceeding. The Becks have taken the holding of Culhane one step further and are attempting to challenge the validity of a mortgage in a case where a foreclosure has not been commenced, but where the title to their property has been "clouded." They want this court to issue an order that voids their mortgage. To my knowledge there is no Maine precedent concerning the standing of a mortgagor to pursue such relief.

Although CMI is identified in the complaint as the servicer of the loan, a descriptor that could theoretically encompass a number of functions, CMI's affidavit explains its actual role more fully. On September 6, 2012, MERS, as nominee for Provident, assigned the mortgage to

---

[4] Both Massachusetts and Maine follow the title theory of mortgages. Culhane, 708 F.3d at 292; Mortg. Elec. Registration Sys. v. Saunders, 2010 ME 79, ¶ 8, 2 A.3d at 294.

CMI, which assignment was recorded in the Lincoln County Registry of Deeds at Book 4569, Page 102. (Rich Aff. ¶ 5, ECF No. 16; Rich Aff. Ex. C, Assignment of Mortgage, ECF No. 16-3.) The assignment suggests that MERS, as Provident's nominee, assigned the Becks' mortgage to CMI in September 2012, prior to the commencement of this litigation. The exhibit contains a stamp indicating that CMI, or someone on its behalf, recorded the mortgage assignment in the Lincoln County Registry of Deeds. CMI's own submission reflects that the MERS assignment[5] gave CMI the status of not only loan servicer but also of mortgagee, which might[6] make CMI a party that, under Maine law, would be able to enforce the mortgage in a foreclosure action. 14 M.R.S. § 6321; see also Bank of Am. v. Cloutier, 2013 ME 17, ¶¶ 16, 21, 61 A.3d 1242, 1246-47; JPMorgan Chase Bank v. Harp, 2011 ME 5, ¶ 9, 10 A.3d 718, 719-20; Chase Home Fin. LLC v. Higgins, 2009 ME 136, ¶ 11, 985 A.2d 508, 510-11; see also Mortg. Elec. Registration Sys., Inc. v. Saunders, 2010 ME 79, ¶¶ 10, 12, 14-15, 2 A.3d 289, 296-97 (holding that mortgagor's default under promissory note did not confer standing upon MERS, as nominee mortgagee, to pursue a judicial foreclosure action under 14 M.R.S. § 6321 because MERS did not possess beneficial interest in the promissory note and consequently suffered no injury upon the mortgagor's default under the note).

---

[5] Technically, recordation of a mortgage assignment with the registry is not required to foreclose. Mott v. Lombard, 655 A.2d 362, 364 (Me. 1995); 14 M.R.S. § 2401(3)(G) (requiring that a judgment on a mortgage foreclosure action state the book and page number of the mortgage, "if any.")

[6] CMI claims in its memorandum that Provident endorsed the note over to it following the origination of the loan. (See ECF No. 15, at 2, citing to Rich Aff. & Note.) While the note, as the Becks concede in their complaint, is fully assignable, the only evidence that it was transferred to CMI is the stamp endorsement on Page ID # 84 of the exhibit submitted by the defendants. (See Rich Aff. Ex. B, Promissory Note, ECF No. 16-2, at 5.) The complaint alleges it was never assigned to CMI. (Complaint ¶ 18.) At this juncture I must accept the facts alleged in the complaint as true, even though I am permitted to consider the content of the actual relevant documents, such as the note and mortgage, which are incorporated into the complaint itself, and the assignment, which is germane to the question of standing. While the stamp endorsement strongly suggests the note was transferred to CMI, it is extraneous to the original note which is identified as a three-page document. The provenance of the "without recourse" stamp is not explained on this record other than by the ipse dixit in the CMI's memorandum. If the court accepts that CMI also holds the note, it would tend to crystalize the dispute between the Becks and CMI for purposes of the standing analysis because, having both the note and the mortgage in its possession, CMI would be in a position to foreclose in the event of default.

9

The Becks allege that even in the absence of a pending foreclosure, the actions of CMI have placed a cloud on their title. CMI's own submission indicates that CMI has caused a mortgage assignment document to be filed in the registry of deeds. Conceivably, this filing clouds the plaintiffs' title and might complicate their attempt to convey the property. Certainly it would complicate any effort to convey the property free and clear of the mortgage. On the other hand, the impediment generated by CMI's new filing is the same impediment that existed previously, a mortgage voluntarily executed by the plaintiffs. In other words, the cloud on their title at present is no darker than the cloud created when the Becks first executed the mortgage. Because their rights respecting the mortgage in their property are not diminished by CMI's action and none of the defendants is currently attempting to enforce the mortgage, there is some ground to question whether the Becks have shown a particularized injury as opposed to a purely conjectural or hypothetical injury. However, my own conclusion is that these kinds of allegations, growing as they do out of a national controversy over the economic implications of the MERS mortgage filing system, involve a substantial controversy between parties with adverse legal interests. If the Becks could obtain the relief they seek, they would experience a substantial economic benefit in the form of an enhanced equity position in their property and the holder of their note would suffer a loss of security. The Becks merely wish to force a resolution to a burning question involving the value of one of their primary assets. Their access to the courts should not turn on whether they are facing foreclosure. Nullification of their mortgage would have substantial and immediate economic significance to them, even without nullification of the promissory note. In my own view, all of the arguments in favor of denying their standing to bring suit are more in the nature of arguments about why the Becks' lawsuit fails to state a claim.

**B.    Failure to State a Claim**

CMI argues that the Becks have not stated a contract claim against CMI because CMI has no contract with the Becks. (Mem. in Support of Mot. to Dismiss at 6.) CMI next argues that the Becks have not stated a claim to quiet title or for declaratory relief because it is undisputed that a mortgage is recorded on the Becks' property and the Becks' allegations concerning the alleged nullification of a mortgage by separation from the note simply do not describe a cognizable claim. (Id. at 8-10.) With respect to the declaratory judgment claim, CMI adds that there is no actual case or controversy for the court to resolve and that the Becks are really just requesting an advisory opinion about potential defenses to a hypothetical, future foreclosure action. (Id. at 11.) Finally, CMI argues that there is no plausible claim of fraud on these facts because the Becks have not identified any false representation. (Id. at 12-13.) CMI is correct that the Becks have failed to state a claim for which relief may be granted.

*1.    Count One—Breach of Contract*

Proof of a breach of contract action consists of three elements: (1) breach of a material contract term; (2) causation; and (3) damages. Wetmore v. MacDonald, Page, Schatz, Fletcher & Co., LLC, 476 F.3d 1, 3 (1st Cir. 2007) (citing Me. Energy Recovery Co. v. United Steel Structures, Inc., 1999 ME 31, ¶ 7, 724 A.2d 1248, 1250). The plaintiffs allege that the material breaches of contract terms occurred when the note and the mortgage were transferred separately and when MERS and Fannie Mae failed to record the transfer of the loan in the Lincoln County Registry of Deeds. (Complaint ¶¶ 68-70.) CMI is identified only as the servicer of a loan. It is unclear from the complaint what role, if any, CMI is alleged to have had in this breach of contract. In fact, as CMI points out, "the Becks' breach of contract claim fails on the most basic level," as there is no allegation that there ever was any contract between the Becks and CMI.

(Mem. in Support of Mot. to Dismiss at 6, ECF No. 15.)  The Becks do allege that the "loan transaction is contractual in nature" (Complaint ¶ 66) and that all defendants are in privity with them (id. ¶ 67), but those allegations do not provide factual content as to any alleged breach by CMI.  In fact, the bulk of the allegations pertaining to CMI relate to its alleged breach of statutory obligations in count two, the count asserting a claim for violation of the Real Estate Settlement Procedures Act (RESPA), which is not a subject of this motion to dismiss.  The breach of contract claim as against CMI should be dismissed.  If the court does not regard the pleading deficiencies related to privity to be a sufficient basis, standing alone, to warrant dismissal, then for reasons provided in the following discussion of counts three and four the claimed breaches related to transfer and recordation do not describe actionable conduct.

    2.  *Count Three and Count Four—Quiet Title and Declaratory Relief*

These two counts essentially state the same claim, asking this court to declare that the mortgage is void because it has been separated from the note and because the assignment was not recorded in compliance with recording statutes.  Each count requests that the defendants be barred from claiming any right or title to the premises adverse to the plaintiffs.  Unfortunately for the Becks, there is no viable legal theory that would authorize the court to issue an order nullifying their mortgage on the facts they allege.  Assuming that the note and the mortgage were actually "separated," as the Becks allege, as a matter of Maine law separation of the mortgage from the note (*i.e.*, possession of the note being in one party and possession of the mortgage being in another) does not nullify or void the mortgage.  As indicated in CMI's motion, this was acknowledged by the Maine Supreme Judicial Court (Law Court) as early as 1883.  Jordan v. Cheney, 74 Me. 359, 361 (1883) ("One who takes a mortgagee's title holds it in trust for the owner of the debt to secure which the mortgage was given.  If a mortgage is given to secure

negotiable promissory notes, and the notes are transferred, the mortgagee and all claiming under him will hold the mortgaged property in trust for the holder of the notes."). Moreover, in Maine the modern practice of using MERS as a nominee mortgagee to facilitate the securitization of mortgage-backed promissory notes does not preclude foreclosure by a successor-assignee of the mortgage who also gains possession of the promissory note. See Bank of Am. v. Cloutier, 2013 ME 17, ¶¶ 16, 21, 61 A.3d 1242, 1246-47 (holding that a loan servicer that does not own the beneficial interest in the note may enforce the note through a foreclosure action provided it holds the note, identifies the party with the economic interest in the note, and proves that it has been delegated power to enforce the note); HSBC Mortg. Servs. v. Murphy, 201 ME 59, ¶¶ 12, 17-18, 19 A.3d 815, 821-23 (vacating summary judgment of foreclosure where the plaintiff failed to provide trustworthy affidavits authenticating the assignments as records of regularly conducted business activity, but nowhere suggesting that a properly executed assignment from MERS is insufficient to confer standing to foreclose); Saunders, 2010 ME 79, ¶¶ 10, 12, 14-15, 2 A.3d 289, 296-97 (describing MERS as a nominee title holder and holding that MERS lacked standing to foreclose only because MERS did not also possess the beneficial interest in the promissory note). To my knowledge there is no Maine case holding that MERS lacks a sufficient legal interest in the mortgages it holds and records to validly assign the mortgages to other entities for purposes of foreclosure. Nor have the Becks identified any legal precedent from another jurisdiction so holding. There is reliable authority to the contrary, however. See Culhane, 708 F.3d at 291 (rejecting the plaintiff's "thesis" that MERS "did not legitimately hold the mortgage at the time of assignment and, therefore, had nothing to assign"). Because the Becks are premising these claims on an invalid legal theory, the claims should be dismissed.

13

*3.     Fraud*

The Becks have not included a count for fraud in their complaint. Nevertheless, CMI has requested that a claim of fraud be dismissed because there are allegations of fraud in the complaint. (Mem. in Support of Mot. to Dismiss at 12 (referencing Complaint ¶ 54).) The elements of fraud include the making of a false representation of material fact and detrimental reliance. Barr v. Dyke, 2012 ME 108, ¶16, 49 A.3d 1280, 1286-87. CMI says that the fraud claim should be dismissed for failure to allege the fraud with sufficient specificity, in violation of Rule 9 of the Federal Rules of Civil Procedure. (Mem. in Support of Mot. to Dismiss at 12-13.) If that were the only obstacle, I would advise the court to permit the pro se plaintiffs to amend their complaint because the allegations suggest they would be able to set forth the particulars concerning time, place, and content of the representations or omissions of which they complain. Instead, the court should dismiss any fraud claim for substantially the same reasons it should dismiss the quiet title and declaratory judgment claims. Just as there is no nullification of mortgages merely as a consequence of using MERS as a nominee for the purpose of holding legal title to and recording the mortgage, there is no falsehood in the mortgage instrument or in the act of assigning the mortgage, whether the assignment "separates" the mortgage from the note, and whether the assignment is unaccompanied by recordation.

## CONCLUSION

The legal controversy that the Becks conceive of is a right to have their mortgage declared null and void, essentially because the original mortgagee assigned the mortgage to MERS and because their securitized obligation to pay their promissory note has been used in combination with other mortgages to create an investment product that was sold to unidentified investors. This legal assertion concerns a substantial controversy touching on the legal relations

of parties with adverse legal interests. Accordingly, I recommend that the court not dismiss the controversy on jurisdictional grounds. However, for reasons stated in the foregoing discussion, as a matter of law the separation of the mortgage from the note did not void or nullify the mortgage and an assignment of the mortgage to or through MERS is not per se invalid for purposes of any potential foreclosure action that might be brought in the future, should the Becks default under the note. Consequently, the allegations put forth by the Becks, which are for the most part legal conclusions rather than factual allegations, fail to state a claim for which relief can be granted. For this reason, I recommend that the court grant CitiMortgage Inc.'s motion to dismiss (ECF No. 14) and dismiss counts one, two, and four, as well as any claim of fraud that might be extrapolated from the pro se complaint.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

June 27, 2013                                          /s/ Margaret J. Kravchuk
                                                       U.S. Magistrate Judge